STATE OF NORTH CAROLINA v. CLIFFORD LEE MARTIN AND
McKINLEY GIBBS WALKER

No. 68SC232

(Filed 14 August 1968)

1. Appeal and Error §§ 24, 30— admission of evidence — consideration on appeal — objection and motion to strike

No question as to the admission of evidence is presented on appeal where no objection or motion to strike was made at the trial.

2. Burglary and Unlawful Breakings § 7; Criminal Law § 115— breaking and entering without felonious intent — necessity for instruction

In a prosecution for breaking and entering with intent to commit a felony, the court did not err in failing to submit the question of defendants' guilt of the misdemeanor of wrongfully breaking and entering without felonious intent where the evidence was that defendants were surprised in a home which they had broken and entered, that money and other chattels were kept in the home, and that furnishings and other property in the home were in disarray, the evidence pointing unerringly to an intent to commit a felony.

APPEAL by defendants from *Bryson, J.,* November 1967 Criminal Term, RUTHERFORD Superior Court.

Defendants were tried, on valid bills of indictment, for breaking and entering with intent to commit a felony or other infamous crime.

Mr. Ben Davis testified that he and his wife had been away from home on Sunday, 28 May 1967, since about 9 o'clock a.m.; that they returned between 3 and 4 o'clock in the afternoon; that there was a 1963 4-door Ford in the yard; that he told his wife they had company; that he pulled his car in behind it and got out of his car; that he saw Jeff Wilson at the back door and saw Gibbs Walker and Martin come out behind him; that he had known Walker all of Walker's life and had known Martin about 4 years; that they ran out of the house and hid behind some bushes; that he removed the key from the Ford, went in the house, latched the screen door, and got a shot gun; that the lock on the back door had been kicked out and the glass "busted" out; that he went to the front door and unlocked it, and Jeffrey Wilson came on the porch demanding the car keys; that Wilson contended he had nothing to do with it but had just picked up the other two boys; that he told Wilson to get off the porch and sit down; that the three boys ran to the creek, down the creek into the woods; that officers came and called for bloodhounds; that when he and his wife went in the house, it was in disarray; that they had left two big barrels of quilts, sheets, etc. in the closet and the contents of these barrels "strung out on the floor";

that he had over $200.00 worth of old coins he usually kept in that closet, but his wife had moved them to another bedroom and put them in a wardrobe under some dresses; that the utility room door was not locked; that an electric fan had been "bent all to pieces"; that there was some money in a trunk in the closet "where they was pulling all that stuff out"; that the trunk wasn't damaged and the money was not taken. Mr. Davis also testified that two doors of the car were open when he drove up.

Officer Lorrance testified that he went to the Davis home as the result of a call; that a white '63 Ford was parked in the yard to which Mr. Davis had the keys; that Mr. Davis told him three men had run out of his house; that the dogs were called for; that Officer Byers, who had arrived, started patrolling the road; that he went into the house with Mr. Davis; that when the dogs arrived he went to the woods with the man and the dogs where he stayed until he learned by radio message that two subjects had been identified; that the house of Mr. Davis was in disarray; that the door had been forced and the glass broken; that the furnishings in the house were worth between $1600.00 and $2000.00; that Mr. Davis told him he knew who the boys were and gave him their names, but he couldn't remember whether this was before or after he ran the dogs; that he did not put the names on the radio. Mr. Davis identified Walker and Martin in the courtroom as two of the people who ran out of his house.

Neither defendant testified. Officer Byers was called and examined by defendants. He testified that when he first went to the house Mr. Davis told him he had come home and surprised three boys in his house and named Jeffrey Wilson but did not at that time name the other two; that he went out on the road to see if he could see the boys when they came out of the woods; that he saw the defendants walking on the road and did not stop them but then went back and picked them up; that this was some three or four miles from the Davis home and some 30 minutes had elapsed from the time he got the message to go to Mr. Davis' house and the time he picked up defendants to take them back to Mr. Davis' house to see if he could identify them; that by crossing the creek and going through the woods it was about a mile from where he saw defendants to the Davis house; that when he took the boys back to the Davis house, Mr. Davis identified them as two of the boys who came out of his house.

Gwendolyn Pritchard, sister of McKinley Walker, testified that Martin and Walker came to her house walking on that Sunday about

12:30 or 1:00; that she lived about five miles from the Davis house; that they stayed until 3:30 or 4:00 and left her house walking; that she is the aunt of Jeffrey Wilson.

The jury returned a verdict of "guilty as charged" as to both defendants. From judgments thereon, defendants appealed.

*Carroll W. Walden, Jr. for defendant appellants.*

*T. W. Bruton, Attorney General, by James F. Bullock, Deputy Attorney General, for the State, appellee.*

MORRIS, J.

Defendants have set out no exceptions in their assignments of error. Four of their assignments of error are addressed to alleged errors in the court's charge. The charge is not, however, set out in the record. While these are plain and obvious failures to comply with sections (a) and (c) of Rule 19, Rules of Practice in the Court of Appeals of North Carolina, we have considered each assignment of error and find each to be without merit.

[1]    Defendants' contention that the allowance in evidence of Mr. Davis' testimony that "my wife, she was hollerin' to the top of her voice, 'we have been robbed, we have been robbed'" constituted prejudicial error cannot be sustained. Defendant Martin did not object thereto. No objection was interposed by defendant Walker nor any motion to strike made by him when the same statement was made by Mr. Davis on cross-examination by counsel for defendant Martin. The objection cannot now be raised. *State v. Howell,* 239 N.C. 78, 79 S.E. 2d 235.

[2]    Assignments of error Nos. 4 and 5 are addressed to the court's charge. Defendants earnestly contend that the court should have read G.S. 14-54 in its entirety. G.S. 14-54 provides:

"§ 14-54. *Breaking into or entering houses otherwise than burglariously.* — If any person with intent to commit a felony or other infamous crime therein, shall break or enter either the dwelling house of another otherwise than by a burglarious breaking; or any storehouse, shop, warehouse, bankinghouse, countinghouse or other building where any merchandise, chattel, money, valuable security or other personal property shall be; or any uninhabited house, he shall be guilty of a felony, and shall be imprisoned in the State's prison or county jail not less than four months nor more than ten years. Where such breaking or entering shall be wrongfully done without intent to commit

a felony or other infamous crime, he shall be guilty of a misdemeanor."

Defendants say the court committed reversible error in failing to instruct the jury that they could consider the lesser degree and find defendants guilty of the misdemeanor of wrongfully breaking and entering without intent to commit a felony. They insist that the evidence merely casts a suspicion of their intent to commit a felony and rely on *State v. Jones*, 264 N.C. 134, 141 S.E. 2d 27, and *State v. Worthey*, 270 N.C. 444, 154 S.E. 2d 515. In *State v. Jones, supra,* the evidence was that the defendants entered the boiler room of a cleaning plant, then broke an inside window between the boiler room and the main building. An employee in the main building heard the noise, accosted them, and they fled. There was no evidence any personal property was disturbed nor no positive testimony as to whether merchandise, chattels, money, valuable securities were in the boiler room or the main building. In *State v. Worthey, supra,* the evidence was that at a time when only the watchman and manager were on the premises of Swift & Company plant, an employee noticed that the screens were torn off two windows of one of the buildings. The building was used as a washroom and locker room for employees when the plant was in operation. It housed a table, lockers, showers, sink and toilet facilities. The employee went to a window, heard someone inside and called the police. Upon the demand of the police, defendant came out. He insisted he had gone in to meet an employee named "Robert" who was to give him a ride and had used the toilet facilities while in the building. There was evidence that no Swift employee was named "Robert". In both cases, the Court held that the trial judge should have charged on the lesser degree because "The evidence as to defendant's intent was circumstantial and did not point unerringly to an intent to commit a felony; the jury might have found defendant guilty of a misdemeanor upon the evidence." *State v. Worthey, supra,* at 446.

> "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Jones, supra,* at 136, 137.

We think here the evidence points unerringly to an intent to commit a felony and differentiates this case from *State v. Jones, supra,* and *State v. Worthey, supra.* The evidence leaves no doubt but that defendants were interrupted in their mission, and the fact

that they were unsuccessful does not entitle them to a charge on the lesser degree of the crime charged.

We have carefully considered the entire charge of the court. There is no merit in defendants' contention that the court placed most of the emphasis on the contentions, evidence, and law arising thereon in favor of the State and thereby expressed an opinion in violation of G.S. 1-180. Defendants put on very little evidence. Naturally the recapitulation of the evidence by the court would require more time as to the State's evidence than the defendants'. Although defendants complain of no particular portion of the charge, we find that the court fairly and accurately stated the contentions and evidence of both parties.

The remainder of defendants' assignments of error are not brought forward in their brief, and are deemed abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

In the defendants' trial we find

No error.

CAMPBELL and BRITT, JJ., concur.