This is a divorce case.
The parties were divorced by the Mobile County Circuit Court in September 1987, following ore tenus proceedings. The circuit court awarded the wife the marital home, a lump-sum payment of $10,000, and $300 a month as periodic alimony — all in accordance with an antenuptial agreement executed by the parties a few months earlier.
The husband appeals. We affirm.
The record reveals that the parties were first divorced in September 1985 after a marriage of approximately sixteen years. The testimony reflects that the husband sought to reconcile with the wife following that divorce, and they apparently did reconcile and remarried in April 1987.
In March 1987, just a few days prior to their remarriage, the parties executed an antenuptial agreement. The most significant provision of that agreement specified that, "[i]f the parties marry and subsequently the Prospective Husband takes to excessive drink or causes any bodily injury or causes mental cruelty to Prospective Wife and such actions lead to a divorce between the parties, Prospective Husband agrees to transfer to Prospective Wife" the marital home, a lump-sum payment of $10,000, and periodic alimony of $300 per month.
It is apparently undisputed that the husband and the wife had a physical altercation one evening in June 1987 after the husband had had "a few drinks." Shortly thereafter, the wife filed for a divorce and *Page 599 
sought to invoke the terms of the antenuptial agreement.
The husband contends that the antenuptial agreement is invalid because it is one-sided and punitive in nature and that the trial court, therefore, abused its discretion in awarding the wife alimony and in making a division of the parties' property based on the agreement. We disagree.
It is well established — and the husband really does not dispute — that antenuptial agreements are valid in this state.Barnhill v. Barnhill, 386 So.2d 749 (Ala.Civ.App.), cert.denied, 386 So.2d 752 (Ala. 1980); Reynolds v. Reynolds,376 So.2d 732 (Ala.Civ.App. 1979).
Usually it is the husband who seeks to rely upon the terms of an antenuptial agreement, and a court will scrutinize the agreement to determine if it is just and reasonable to the wife. See Barnhill, 386 So.2d 749; Allison v. Stevens, 269 Ala. 288, 112 So.2d 451 (1959). Although in this case it is the wife who relies upon the antenuptial agreement and the husband who seeks to evade its terms, we find the same principles apply to determine the agreement's validity.
Accordingly, the wife — in this case the party relying upon the antenuptial agreement — has the burden to show that the consideration was adequate, that the entire transaction was fair, just, and equitable from the husband's point of view, and that the agreement was freely and voluntarily entered into by the husband with competent independent advice and full knowledge of his estate. See Barnhill, 386 So.2d at 751.
We find that the evidence before the trial court supports its conclusion that the wife met her burden of establishing the validity of the antenuptial agreement.
The testimony of both of the parties, as well as that of the wife's daughter-in-law, reflects that, after the parties' 1985 divorce, the husband actively sought a reconciliation with the wife and that her agreement to remarry him was clearly the consideration he received in return for his executing the antenuptial agreement. As we stated in Barnhill, marriage may be adequate consideration for an antenuptial agreement. We, therefore, find the husband's contention that the agreement was strictly punitive and in effect one-sided to be without merit.
Although the husband now claims that the award to the wife under the terms of the antenuptial agreement "is grossly unfair and inequitable," the record reflects that the husband participated in the drawing up of the agreement and was fully aware of the rights he was giving the wife thereunder.
The husband also makes much of the fact that the parties were not represented by independent counsel when the antenuptial agreement was prepared and executed.
We make no comment with regard to the ability of an attorney to represent both parties to an antenuptial agreement. Under the facts of this case, however, the fact that independent counsel was not secured by the husband does not, in our opinion, invalidate the contract.
The attorney who drew up the antenuptial agreement testified that, before the parties executed the agreement, he had them read over the agreement and that they both stated that it was satisfactory to them. More importantly, the attorney testified that he "also explained the fact that they had the right to be represented by separate attorneys. They decided that they would waive that right and just use me." The attorney's testimony is supported by the terms of the agreement itself.
Where the evidence was presented to the trial court oretenus, as in this case, the trial court's judgment is presumed to be correct and will not be reversed unless it is so unsupported by the evidence as to be plainly and palpably wrong. Sayles v. Sayles, 495 So.2d 1131 (Ala.Civ.App. 1986).
We find the evidence in this case to support the trial court's conclusion that the parties' antenuptial agreement was valid and binding upon the husband, and, therefore, its judgment is not due to be reversed as being plainly and palpably wrong. *Page 600 
We would note, however, that, even if one considered the antenuptial agreement to be invalid, it was still within the trial court's discretion to divide the parties' property and award alimony to the wife. Baggett v. Baggett, 511 So.2d 195
(Ala.Civ.App. 1987). The evidence before the trial court does not indicate that it abused that discretion.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur.