**David R. GASKELL, Appellant–Petitioner/Cross–Appellee,**

v.

**Jane M. GASKELL, Appellee–Respondent/Cross–Appellant.**

No. 79A02–0805–CV–409.

Court of Appeals of Indiana.

Jan. 23, 2009.

---

Carolyn S. Holder, Jennifer M. Fehrenbach, Holder and Fehrenbach, Lafayette, IN, Attorneys for Appellant.

Marcel Katz, Law Offices of Marcel Katz, Lafayette, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

David R. Gaskell ("Husband") appeals the trial court's division of property upon the dissolution of his marriage to Jane M. Gaskell ("Wife"). Wife cross-appeals. We affirm.

### Issues

Husband raises five issues, which we consolidate and restate as follows:

I. Did the trial court err by enforcing the terms of a post-nuptial document signed by Husband?

II. Did the trial court err by awarding the LaGrange Street property to Wife?

III. Did the trial court err by failing to include in the marital estate the sum of $85,000 retained by Wife from the sale proceeds of Husband and Wife's prior residence?

IV. Did the trial court err by ordering an unequal division of the marital estate?

In her cross-appeal, Wife raises one issue, which we restate as whether the trial court erred by including social security payments received by Wife as an offset against Husband's delinquent maintenance obligation.

### Facts and Procedural History

On July 11, 1964, Husband and Wife were married. At the time of the dissolution hearing, they had three adult children. Husband was, at age 67, a full-time professor of materials engineering at Purdue University. He earned a salary of $118,000 per year, and he received textbook royalties of between $5,000 and $15,000 per year. Wife, age 65, worked as a teacher early in the couple's marriage, but she stopped teaching in 1969, prior to the birth of their first child. At the time of the hearing, Wife's income consisted of $959 per month in social security retirement benefits.

The parties have lived apart since June or July of 2000. Around that time, Wife filed a petition for dissolution of marriage in the Tippecanoe Superior Court, cause number 79D02–0006–DR–188. On June 26, 2000, the trial court approved and entered an agreed provisional order prepared by Husband and Wife. The order provided, among other things, that Wife was to have exclusive possession of the marital residence, which at that time was 629 Ridgewood in West Lafayette, and that Husband was to pay maintenance of $2,000 per month. While that dissolution proceeding was pending, Husband and Wife sold the Ridgewood property and purchased the residence at 454 LaGrange Street in West Lafayette. The net proceeds from the sale of the Ridgewood property were approximately $85,000. Wife used approximately $10,000 for home improvements and deposited approximately $75,000 into a bank account ("the Account"). When the couple purchased the

LaGrange Street residence, they arranged to have the property deeded with a 99% interest to Wife and 1% to Husband.

On October 1, 2001, Husband executed a written agreement (the "Agreement"), which provided as follows:

I, David Gaskell will,

1. pay the sum of $2000 to Jane M. Gaskell every month on the first day of the month,

2. pay half of the local property tax on the property at 454 La Grange St. West Lafayette and

3. pay the Petsburgh bill for the pets Maggie the dog and Penny the cat.

Appellee's Exhibits, Final Hearing, Exhibit 10. Eight days later, on October 9, 2001, the parties tiled a stipulation for continuance without date. On May 22, 2002, the trial court entered an order stating as follows: "Parties, by counsel report reconciliation. It is ordered that this case be and it is hereby dismissed for want of prosecution." Appellant's App. at 47.

For a few months, Husband made the payments contemplated in the Agreement, but in December 2001, Husband stopped paying Wife and told her to instead withdraw $2,000 from the Account each month. Wife made withdrawals from the Account until December 2005, when there was no money left. Wife then borrowed money from her sister. In the spring of 2006, Husband and Wife discussed Wife's financial circumstances, and Husband agreed to resume the monthly payments. When Husband failed to send her a check in July 2006, Wife again filed for dissolution.

In its dissolution order of January 25, 2008, the trial court determined that the Agreement of October 1, 2001, is a "separation agreement[.]" Appellant's App. at 34. The trial court ordered the obligations within the Agreement to remain in effect until the date of dissolution. *Id.* The court also ordered the following:

Within 60 days the Husband shall pay to the Wife as delinquent maintenance the sum of $30,043.30, calculated as follows:

| | |
|---|---|
| Maintenance owing at $2,000.00 per month for 76 months | $152,000.00 |

Less:

| | |
|---|---|
| Half net proceeds of Ridgewood sale | $ 42,500.00 |
| Maintenance paid at 12 × $1200.00 | 14,400.00 |
| Cash paid 5/30/06 | 6,000.00 |
| Cash paid 5/30/06 | 5,000.00 |
| Cash paid 10/1/06 | 1,000.00 |
| 1% of value of LaGrange | 1,750.00 |
| Payment for repairs to LaGrange | 2,000.00 |
| Half the PEFCU Account | 6,406.70 |
| Maintenance paid in 2001–02 | 6,000.00 |
| Purchase of vehicles | 36,000.00 |
| | ($121,056.70) |
| | $ 30,943.30 |

*Id.* at 37.

On February 25, 2008, Husband filed a motion to correct error and/or motion for relief from judgment. On April 3, 2008, the trial court issued an order granting in part and denying in part Husband's motion. Recognizing social security payments received by Wife, the trial court added $3,836.00 to the credits against Husband's delinquent maintenance, reducing the total he owed Wife to $27,107.30. Husband now appeals, and Wife cross-appeals.

## Discussion and Decision

### I. Enforcement of Agreement

Husband argues that the trial court erred by enforcing the terms of the Agreement. Our standard of review is well settled.

When a trial court issues findings and conclusions under [Indiana Trial Rule] 52, we review the same under the following two-tiered standard of review: we first must determine whether the evidence supports the findings; then we determine whether the findings support the judgment. We will neither reweigh the evidence nor reassess the credibility of the witnesses and will not set aside

the fact-finding of the trial court unless it is clearly erroneous. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made.

*Flansburg v. Flansburg,* 581 N.E.2d 430, 435 (Ind.Ct.App.1991) (citations omitted), *trans. denied* (1992).

Indiana Code Section 31–15–2–17 governs post-nuptial agreements:

(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for:

 (1) The maintenance of either of the parties;

 (2) The disposition of any property owned by either or both of the parties; and

 (3) The custody and support of the children of the parties.

(b) In an action for dissolution of marriage,

 (1) the terms of the agreement, if approved by the court, shall be incorporated and merged onto the decree and the parties shall be ordered to perform the terms; or

 (2) the court may make provisions for:

 (A) the dispositions of property;

 (B) child support

 (C) maintenance; and

 (D) custody;

 as provided in this title.

 As another panel of this Court noted in *Flansburg,* public policy favors the amicable settlement by written agreement of the property rights of those citizens whose marriage is being dissolved. 581 N.E.2d at 433. Antenuptial agreements are valid and binding " 'so long as they are entered into freely and without fraud, du-

ress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable.' " *Id.* at 436 (quoting *In re Marriage of Boren,* 475 N.E.2d 690, 695 (Ind.1985)). We determined that "[t]he same should be true for reconciliation agreements made between parties who have separated or filed for dissolution." *Id.*

Husband contends that the Agreement is not a reconciliation agreement because it was not signed by both parties and because there was no consideration. Husband asserts, "If one interprets the Memorandum signed by one party as a reasonable settlement, then any litigant in any dissolution action could bring forth a Memorandum that he signed before a Notary and argue that it was somehow binding on the other party." Appellant's App. at 16. Husband's suggestion, that a court might enforce the terms of a post-nuptial document signed by one party to the disadvantage of the other party who was unaware of it, is not persuasive. Clearly, it does not reflect the situation in the instant case, where there is evidence that both parties agreed to the terms of the document, and Husband adhered to them for a period of time. Moreover, *Flansburg* does not state that a post-nuptial agreement requires both parties' signatures or needs to be labeled as a post-nuptial agreement, as Husband claims in his brief. *See* Appellant's Br. at 14. As for the existence of adequate consideration, Husband and Wife filed a stipulation for continuance without date in their dissolution action only eight days after Husband signed the Agreement and subsequently dismissed the dissolution action completely. As we held in *Flansburg,* "the resumption of a marital relationship jeopardized by the initiation of dissolution proceedings, is adequate con-

sideration" for a post-nuptial agreement. 581 N.E.2d at 435.

In our view, the evidence supports the trial court's finding that the Agreement was a reconciliation agreement and as such is enforceable. The trial court's decision to enforce the Agreement was not clearly erroneous and therefore, Husband's argument must fail.

## II. LaGrange Street Property

■ Husband also contends that the trial court erred by awarding to Wife the real estate located at 454 LaGrange Street, her residence which was purchased with the proceeds of the sale of the marital home. In its revised order, the trial court stated: "The Court further finds that the intent of the parties was that the Wife should have 99% interest in the new residence and the Husband a 1% interest." Appellant's App. at 10. The trial court credited Husband with 1% of the value of the LaGrange Street property, or $1,750.

Husband now claims that the trial court's decision is not supported by the evidence. Specifically, he says, "there was no testimony during the entire final hearing that the parties intended that Wife have the real estate set over to her in the event of a divorce." Appellant's Br. at 9. In his motion to correct error, Husband argued: "The fact that the real estate was titled in a certain way could have been done for estate planning purposes, for liability purposes or for a number of different reasons." Appellant's App. at 14. We note, however, that Husband failed to point out any evidence to support any of these possible reasons. The trial court relied upon evidence in deciding to award the property to Wife, namely that the deed reflected a 99% ownership interest for Wife and a 1% ownership interest for Husband. Moreover, in his pre-trial submission, Husband stated that the LaGrange Street property was "99% owned by Wife 1% owned by Husband[.]" Id. at 49.

Husband emphasizes Wife's testimony that she was willing to sell the property and take 60% of the proceeds and Husband's request that the proceeds be divided equally. Id. at 142, 165. Husband argues that the trial court's award was "clearly erroneous" because the parties' testimony is contrary to the court's conclusion regarding their intent. Appellant's Br. at 8. In essence, Husband wants us to reweigh the evidence and conclude that the parties' testimony outweighs the written documentation on this issue. That we will not do. There was evidence to support the trial court's finding, and thus we find no clear error in its decision to award the LaGrange Street property to Wife and offset Husband's 1% interest.

## III. Marital Residence Proceeds

■ Husband also argues that the trial court erred by failing to include in the marital assets the proceeds from the sale of the marital residence, which totaled approximately $85,000. Wife testified that she spent approximately $10,000 of these proceeds upon home improvements and then drew upon the remaining $75,000 after Husband stopped paying her pursuant to the Agreement. Husband claims that the $85,000 should have been reflected in the trial court's itemization of the marital estate and that Husband should have received half, or $42,500. Of course, the money was gone at the time of the final dissolution hearing, and thus the trial court did not list it as an asset of the marital estate. However, our review of the record indicates that the trial court did grant Husband an offset of $42,500 to reflect his 50% interest in these proceeds. See id. at 37 (showing reduction of Husband's delinquent maintenance obligation by $42,500 for "half net proceeds of Ridgewood sale"). We find no error here.

### IV. Unequal Division of Marital Estate

Husband claims that the trial court erred by failing to justify its decision to divide Husband and Wife's marital estate unequally. He is correct in pointing out that Indiana statutory law and caselaw presumes an equal division. *See* Ind.Code § 31–15–7–4; *see also Cowden v. Cowden*, 661 N.E.2d 894, 895 (Ind.Ct.App.1996) (an equal division of marital property is presumed just and reasonable). Evidence of the following factors may be used to rebut that presumption: (1) the contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing; (2) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift; (3) the economic circumstances of each spouse as of the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of the children; (4) the conduct of the parties during the marriage as related to the disposition or dissipation of their property; and (5) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties. Ind.Code § 31–15–7–5. Although the trial court must include all assets in the marital pot, it may decide to award an asset solely to one spouse as part of its just and reasonable property distribution. *Coffey v. Coffey*, 649 N.E.2d 1074, 1077 (Ind.Ct.App.1995).

The party challenging the trial court's division of property must overcome a strong presumption that the trial court complied with the relevant statute and considered evidence on each of the statutory factors. *Id.* at 1076. This is one of the strongest presumptions applicable to our consideration on appeal. *In re Marriage of Stetler*, 657 N.E.2d 395, 398 (Ind.Ct. App.1995), *trans. denied* (1996).

In its order, the trial court set over to Wife the following assets:

| | | |
|---|---|---:|
| (a) | LaGrange Street real estate: | $ 175,000.00 |
| (b) | Subaru vehicle: | $ 18,610.00 |
| (c) | Wife's jewelry: | $ 18,337.00 |
| (d) | Other personal property In Wife's possession | $ 3,275.00 |
| (e) | One-half PEFCU account | $ 6,406.69 |
| (f) | One-half TIAA–CREF Account as of 6–30–06 | $ 870,196.43 |
| (g) | Bank accounts in Wife's name | $ 1,178.95 |
| | TOTAL | $1,093,004.07 |

Appellant's App. at 11. The trial court set over the following assets to Husband:

| | | |
|---|---|---:|
| (a) | One-half of the TIAA–CREF account as of 6–30–06 | $ 870,196.43 |
| (b) | One-half of the PEFCU account | $ 6,406.69 |
| (c) | 2000 Honda Civic | $ 6,785.00 |
| (d) | PEFCU account in Husband's name | $ 5.40 |
| | TOTAL | $ 883,393.52 |

*Id.*

Husband claims that the trial court erred because the factors supporting an equal division of property outweigh the factors supporting an unequal division. He notes the following factors in particular: (1) Husband's financial contributions to the marriage; (2) Wife's exclusive use of the LaGrange Street property for six years; (3) Husband's age and limited number of working years; and (4) the amount of assets to be divided. Wife directs us to several of the trial court's findings which seem to support an unequal division of property in her favor, including Husband's salary of $115,810 per year, plus royalty payments of $6,546; Wife's age of 65 and lack of employment; Wife's termination of her teaching career in 1969, with the agreement of Husband, to assume the role of stay-at-home mother; Wife's duties throughout the marriage as housekeeper, household manager, volunteer worker, and assistant to Husband in his entertaining of

faculty and students; the parties' agreement that Wife need not return to employment outside the home even after the children were grown; and Wife's inability to return to a career in teaching because her teaching certification has expired. Appellant's App. at 24–26.

It is apparent that the trial court determined that the factors in favor of an unequal division of property outweighed the factors supporting an equal division. Balancing these statutory factors and the evidence related to them is the essence of the trial court's work in crafting a just and reasonable property division. *Cowden,* 661 N.E.2d at 896. Husband has failed to overcome our presumption that the trial court considered the proper factors and evidence, and we decline his invitation to reweigh the evidence or substitute our discretion for that of the trial court.

### IV. Social Security Payments

In her cross-appeal, Wife alleges that the trial court erred by crediting four social security payments she received, totaling $3,836.00, against Husband's maintenance obligation because "those payments did not come from [Husband's] earnings or assets." Appellee's Br. at 22. At the final hearing, Husband testified that he had applied for social security benefits so that Wife could draw on his account while this case was pending before the trial court. Appellant's App. at 111. He also noted that, as a result, he was required to suspend his accrual of social security benefits. *Id.* at 112. There was sufficient evidence from which the trial court could have concluded that the parties had agreed to this arrangement for Wife's benefit and that Husband's social security benefits would be reduced as a result. It was within the trial court's equitable power to set off a portion of social security payments received by Wife against Husband's maintenance arrearage.

Affirmed.

ROBB, J., concurs.

BROWN, J. dissents with separate opinion.

BROWN, Judge dissenting.

I respectfully dissent. I conclude that the trial court erred by enforcing the terms of the parties' October 2001 Agreement beyond the date of the first dissolution action and that the trial court's findings and conclusions fail to explain its unequal division of assets.

As for the enforcement of the parties' Agreement, I find this case distinguishable from *Flansburg v. Flansburg,* 581 N.E.2d 430 (Ind.Ct.App.1991), *trans. denied,* upon which the majority relies, and from *Pond v. Pond,* 700 N.E.2d 1130, 1132 (Ind.1998) referred to by the parties in their briefs. In the case before us, the trial court correctly labeled the Agreement signed by Husband as a separation agreement, rather than a reconciliation agreement as denominated by the majority. At the time the Agreement was executed, the parties were living apart, apparently intended to continue doing so, and did in fact do so. Eight days after the date of the Agreement, the parties filed a stipulation continuing the dissolution proceedings indefinitely. The majority correctly determined there was consideration for the Agreement, namely the continuance of the dissolution proceedings. Seven and a half months later, however, the trial court entered an order finding that the parties, through counsel, reported reconciliation, certainly a different status than separation, and the case was dismissed for lack of prosecution.

I believe at that point the legal efficacy of the Agreement was extinguished, as

there was a judicial determination that the parties had reconciled. At that point, if Wife desired to perpetuate the terms of the Agreement, it was incumbent upon her to make its enforcement an issue with the trial court prior to the dismissal of the first dissolution action, or to execute a new agreement with new consideration. Failing to do so, Wife waived enforcement in May 2002. Given the judicial determination of reconciliation, the lack of consideration, and waiver, I would reverse the trial court's enforcement of the Agreement.

Furthermore, I note that, although Finding No. 36 correctly sets out the terms of the Agreement, Conclusion No. 11 provides that the Agreement was a "separation agreement" and lists the terms of the Agreement as follows:

a. Husband shall pay Wife $2,000.00 per month.

b. The parties shall sell the Ridgewood Drive residence and purchase a new residence for the Wife. The Husband shall have a 1% interest in the new residence.

c. The parties shall split the net proceeds of the sale of the Ridgewood Drive marital home in excess of the amount needed to purchase the La-Grange Street residence.

d. Husband shall pay car insurance on Wife's vehicle.

e. Husband shall carry health and vision insurance for the Wife through his employer.

f. Husband shall pay one-half of the real estate taxes for the residential real estate as they become due.

Appellant's Appendix at 34. However, the actual terms of the Agreement were only that Husband would pay $2,000.00 per month to Wife, that Husband would pay one-half of the property taxes on Wife's residence, and that Husband would pay the "Petsburgh bill." Wife's Exhibit 10;

Appellant's Appendix at 48. Consequently, Conclusion No. 11 is clearly erroneous.

Additionally, Conclusion No. 12 provides that the obligations of the Agreement "remain in effect until the date of dissolution." Appellant's Appendix at 34. The terms of the Agreement, however, conflict with the trial court's October 2006 provisional order. The provisional order required Husband to pay $1,200.00 to Wife each month, while the Agreement, if still in effect, required Husband to pay $2,000.00 to Wife each month. In ordering that the terms of the Agreement remained in effect until the date of dissolution, the trial court without authority ignored its own provisional order.

Distinguishing this case from *Flansburg, supra,* I note that in *Flansburg,* both parties signed an agreement during dissolution proceedings, reconciled, and dismissed the dissolution proceedings. The *Flansburg* agreement contained an acknowledgement by the wife that she was seeking reconciliation and was entering into the agreement with that goal in mind. The Court of Appeals applied the law applicable to antenuptials/prenuptials and upheld the agreement as a reconciliation agreement.

A few years later, the Indiana Supreme Court decided *Pond, supra.* In *Pond,* the husband filed for a legal separation, and the parties thereafter signed an agreement dealing with the division of their assets, which agreement was clearly not intended to cover the parties' situation if they reconciled. The wife then filed a dissolution action. The Supreme Court said that the agreement was not a reconciliation agreement but rather a postnuptial agreement within the ambit of IC 31–1–11.5–10 (now IC 31–15–2–17) and effectively a dissolution settlement agreement. The Court noted that the focus of the agreement was

**22**

the division of the parties' property and that the parties had divided and distributed their property between themselves according to the terms of the agreement. The Court also noted that the agreement provided no indication that reconciliation would constitute any part of the consideration for the agreement, and held that it was not a reconciliation agreement and should not be treated as an antenuptial agreement as in *Flansburg*. The Court, citing IC 31–1–11.5–10 (now IC 31–15–2–17), noted further that the agreement's substance was directed at the amicable resolution of "disputes that have arisen or may arise ... attendant upon the dissolution of their marriage" *Id.* at 1135, and upheld the agreement's terms. Again, these facts are clearly distinguishable from those before us.

Finally, I conclude that the trial court failed to explain its deviation from the statutory presumption of an equal division of marital property. "Following the legislative adoption of the equal division presumption, we placed the requirement upon trial courts, when effecting an unequal division of marital property, to state the reasons based on the evidence which establish that an equal division is not just and reasonable." *Hoskins v. Hoskins*, 611 N.E.2d 178, 180 (Ind.Ct.App.1993) (citing *In re Marriage of Davidson*, 540 N.E.2d 641 (Ind.Ct.App.1989), *reh'g denied, trans. denied*). However, express trial court findings will not be required for "insubstantial deviations from precise mathematical equality." *Kirkman v. Kirkman*, 555 N.E.2d 1293, 1294 (Ind.1990).

Here, in Conclusion No. 17, the trial court determined that the parties' intent was that Wife would have a 99% interest in the LaGrange Street house, for which there is certainly a basis in the record. However, this is not justification for an unequal division of the total of the parties' assets. Rather, the conclusion explains only the division of this particular asset. I believe that the findings and conclusions therefore fail to support the unequal division of assets and would remand for an equal division or for the trial court to make a finding as to why it is deviating from an equal division.

For these reasons, I respectfully dissent.