

FILED

Feb 11 2015, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Nicole A. Zelin | Michael C. Cooley |
| Pritzke & Davis, LLP. | Dawn E. Wellman |
| Greenfield, Indiana | Allen Wellman McNew Harvey, LLP |
| | Greenfield, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Marriage of: | February 11, 2015 |
| | Court of Appeals Case No. 30A01-1407-DR-311 |
| Michael O. Hall | |
| *Appellant-Respondent,* | Appeal from the Hancock Circuit Court |
| v. | The Honorable Richard D. Culver, Judge |
| Susan M. Hall, | Case No. 30C01-1311-DR-1994 |
| *Appellee-Petitioner* | |

**Crone, Judge.**

## Case Summary

[1]     Michael O. Hall ("Husband") appeals the trial court's division of property upon the dissolution of his marriage to Susan M. Hall ("Wife"). Specifically, Husband challenges the trial court's conclusion that a written agreement between the parties providing for certain property rights in the event of the

dissolution of the marriage constitutes a valid and enforceable reconciliation agreement. Finding no clear error, we affirm.

## Facts and Procedural History

[2] The evidence favorable to the trial court's judgment indicates that Husband and Wife married on March 2, 2004. Approximately eight months later, Husband became incarcerated. In December 2004, Wife sought the advice of counsel to pursue the dissolution of the marriage. Wife informed Husband that she intended to dissolve the marriage due to his untruthfulness regarding his finances and criminal history, and also because of the parties' separation. Husband did not want the marriage to be dissolved. Wife was adamant about dissolving the marriage and conveyed this to Husband. Husband told Wife that he would do anything to make her more comfortable with him. It was Husband's idea that the parties could make an agreement that would give Wife financial protection in the event of a future divorce. Wife agreed to no longer pursue a dissolution of marriage in exchange for such an agreement.

[3] Wife asked her counsel to draft the type of agreement that Husband and Wife had discussed. When counsel was unresponsive for several months, Wife decided that she would need to draft the agreement herself. Before doing so, however, Wife had numerous discussions with Husband about each party's assets and the type of information that would be included in the agreement. Thereafter, Wife drafted a document titled "Postnuptial Agreement" ("the Agreement"), dated April 3, 2005, wherein the parties agreed to a distribution of real and personal property in the event of dissolution. The Agreement

provided that the parties "agree to keep separate any properties or assets that either party brought to the marriage or incur during the marriage in separate name and/or separate business or farm names." Appellant's App. at 37. The Agreement stated that "[b]oth parties agree to keep properties and assets separate and lay no claim to the other[']s property or assets in the event of divorce or separation or legal action against the individuals...." *Id*. Further, "[b]oth parties agree to be jointly responsible for those properties and assets acquired under joint names of ownership from this time forward." *Id.* The Agreement provided an itemized list of the assets held by each party on the date of the Agreement.

[4] Wife mailed the Agreement to Husband for his review and signature. Husband reviewed the Agreement and signed it before a notary public in the Department of Correction on April 6, 2005. After signing the Agreement, Husband mailed it back to Wife. Wife signed the Agreement after receiving it from Husband. After the Agreement was executed, Wife no longer pursued the dissolution of the parties' marriage.

[5] While Husband remained incarcerated, Wife assisted him with his financial affairs, retained his personal belongings at her residence, and continued to visit him in the Department of Correction. Husband was released from incarceration in June 2006 and returned to live with Wife. The parties resided together as a married couple from the date of Husband's release until they separated on October 23, 2013. Throughout that time, the parties abided by the terms of the Agreement by keeping their respective real and personal property

separate and treating any properties placed in both parties' names as a joint responsibility and obligation.

[6]     Wife filed a petition for dissolution of marriage on November 5, 2013. The parties participated in mediation until February 2014, when Wife filed a motion to enforce the Agreement. *Id*. at 9. Following an evidentiary hearing, the trial court entered its findings of fact, conclusions thereon, and judgment determining that the Agreement was a valid and enforceable reconciliation agreement "made in contemplation of and in exchange for reconciling the parties' marriage." *Id*. at 49. Specifically, the trial court concluded in relevant part,

> 28. The facts establish that the parties herein were sufficiently separated and [Wife] was sufficiently furthering her rights to terminate the marriage, such that the extension of marriage as a result of the execution of the reconciliation agreement is sufficient and adequate consideration to make the agreement binding.
>
> 29. Sufficient mutual intent exists and is evidenced by the parties operating their respective businesses and real and personal property interests in accordance with the terms of the reconciliation agreement for numerous years following the document[']s execution.
>
> 30. In furtherance of public policy of this State, the amicable settlement by written agreement of the property rights of those citizens whose marriage is being dissolved should be strictly enforced to the full extent of the agreement; therefore, the [Agreement] in this case should be strictly enforced and neither party shall claim a right or interest in the other parties[sic] assets which are titled or deeded in his or her name, solely.

*Id*. at 48-49 (internal citation omitted).

Husband filed a motion to certify the order for interlocutory appeal, which was denied by the trial court. A final dissolution hearing was held on June 16, 2014, and a decree of dissolution was entered on June 24, 2014. Among other things, the dissolution decree provided for the division of property in accordance with the Agreement. This appeal ensued.

# Discussion and Decision

Husband asserts that the trial court erred in concluding that the Agreement is a valid and enforceable reconciliation agreement. In making its decision, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Our two-tiered standard of review is well settled:

> [F]irst we determine whether the evidence supports the findings, and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo.

*Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011) (citations omitted), *trans. denied*.

Other panels of this Court have recognized that "public policy favors the amicable settlement by written agreement of the property rights of citizens whose marriage is being dissolved." *Gaskell v. Gaskell*, 900 N.E.2d 13, 17 (Ind.

Ct. App. 2009) (citing *Flansburg v. Flansburg*, 581 N.E.2d 430, 433 (Ind. Ct. App. 1991), *trans. denied* (1992)). It has long been held that antenuptial agreements are valid and binding "so long as they are entered into freely and without fraud, duress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable[,]" *In re Marriage of Boren*, 475 N.E.2d 690, 693 (Ind. 1985), and we have concluded that the same should apply to reconciliation agreements made between parties in order to preserve the marriage. *Flansburg*, 581 N.E.2d at 436. As Husband challenges the validity of the Agreement here on several grounds, we will address each challenge in turn.

## Section 1 – The Agreement was supported by adequate consideration.

[10] Husband first argues that the Agreement is not a valid reconciliation agreement because it lacked adequate consideration. We have stated that "the extension of a marriage that would have otherwise been dissolved but for the execution of an agreement to reconcile has been deemed adequate consideration" to support a reconciliation agreement. *Id.* at 434.

[11] Both Husband and Wife testified that, although Wife had sought counsel and was adamant about pursuing the dissolution of the parties' marriage, she decided not to pursue the dissolution only after and because the parties executed the Agreement. Indeed, the evidence indicates that the Agreement was originally Husband's idea and that both parties fully intended and accepted that the purpose of the Agreement was to preserve a marriage that otherwise

would be dissolved. The parties remained married for an additional eight years after execution of the Agreement and abided by the terms of the Agreement during that time. This evidence supports the trial court's findings and conclusion that the Agreement constituted a reconciliation agreement supported by adequate consideration.

[12] Husband maintains that "[a]t no time did the parties, in any legal sense, separate or move to dissolve the marriage," and therefore the record does not support a conclusion that the marriage would have been dissolved but for the Agreement. Appellant's Br. at 8. Husband points to language used by this Court in our prior opinions and argues that a valid reconciliation agreement may only be made between parties who have legally "separated or filed for dissolution." *See Gaskell*, 900 N.E.2d at 17 (quoting *Flansburg*, 581 N.E.2d at 436). Husband claims that Wife's mere contemplation of dissolving the marriage was not sufficient.

[13] We acknowledge the language used in *Gaskell* and *Flansburg* and recognize that, most often, the initiation of dissolution proceedings will in fact precede the execution of a reconciliation agreement as it did in those cases. Nevertheless, we disagree with Husband that such is a condition precedent to a valid and enforceable reconciliation agreement. The proper inquiry is whether the agreement was executed in order to preserve and extend a marriage that otherwise would have been dissolved but for the execution of the agreement, *see Flansburg*, 581 N.E.2d at 434, regardless of whether formal separation has already occurred or legal proceedings initiated. Based upon the evidence

referenced above, the trial court concluded that "the parties herein were sufficiently separated" and Wife was "sufficiently furthering her rights to terminate the marriage, such that the extension of marriage as a result of the execution of the [Agreement] is sufficient and adequate consideration to make the agreement binding." Appellant's App. at 49. This conclusion is supported by the trial court's findings of fact and, under the circumstances presented, Husband has not convinced us that a mistake has been made.

## Section 2 – Husband was not under duress when he signed the Agreement.

[14] Husband next asserts that the Agreement is unenforceable because he signed the document under duress. On this issue, the trial court specifically found that "[n]either party was under duress or undue influence prior to or during the signing" of the Agreement. *Id*. at 47. Husband maintains that he was under duress because he was incarcerated, without access to legal counsel, and because Wife threatened to divorce him if he did not sign the Agreement.

[15] "'In order to avoid a contract on the basis of duress, there must be an actual or threatened violence [or] restraint of a man's person contrary to law, to compel him to enter into a contract or discharge one.'" *Youngblood v. Jefferson Cnty. Div. of Family & Children*, 838 N.E.2d 1164, 1170 (Ind. Ct. App. 2005) (quoting *Carrasco v. Grubb*, 824 N.E.2d 705, 711 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied* (2006). "In deciding whether a person signed a document under duress, 'the ultimate fact to be determined is whether or not the purported victim was deprived of the free exercise of his own will.'" *Id.* (quoting *Raymundo v.*

*Hammond Clinic Ass'n*, 449 N.E.2d 276, 283 (Ind. 1983)). There is no evidence in the record that Husband was deprived of the free exercise of his own will regarding the execution of the Agreement. Husband's reliance on the mere fact of his incarceration as clear evidence of duress is unpersuasive. Husband's further argument that he was under duress because Wife was threatening to divorce him if he did not sign the Agreement is similarly unpersuasive and begs the question of the entire purpose of any reconciliation agreement. The trial court's finding on this issue is not clearly erroneous.

## Section 3 – A meeting of the minds occurred.

[16]     Husband maintains that the Agreement is unenforceable because, although both parties signed the document, Wife's signature was neither notarized nor dated, and therefore there is insufficient evidence that a "meeting of the minds" occurred. "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005). The intent of the parties to a contract is a factual matter to be determined from all the circumstances. *Id.* Husband directs us to no authority, because there is none, that a notarized and dated signature is required to effectuate a meeting of the minds of the contracting parties. Significantly, the trial court made numerous findings of fact regarding the authenticity of the parties' signatures and their mutual intent in contracting, and Husband makes no argument that any of those findings are unsupported by the evidence. Husband essentially requests us to reweigh the evidence in his favor, which we may not do. We find no error.

## Section 4 – The trial court did not abuse its discretion when it admitted parole evidence.

Finally, Husband contends that the trial court abused its discretion when, during the hearing on Wife's motion to enforce the Agreement, it admitted parole evidence regarding Wife's "intent behind the creation of the [Agreement]." Appellant's Br. at 10. We disagree.

We review the admission or exclusion of evidence only for an abuse of discretion. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). It is well settled that parole evidence "may be considered if it is not being offered to vary the terms of the written contract[.]" *Goodrich Quality Theaters, Inc. v. Fostcorp Heating & Cooling, Inc.*, 16 N.E.3d 426, 439 (Ind. Ct. App. 2014) (citation omitted). Among other reasons, parole evidence may be considered to "show the nature of the consideration supporting a contract" and "to shed light upon the circumstances under which the parties entered into the written contract." *Id*. Our review of the record reveals that these are precisely the reasons that the trial court admitted Wife's testimony and her testimony was in no way offered to vary the terms of the Agreement. The trial court did not abuse its discretion in admitting Wife's testimony.

## Conclusion

In sum, the trial court's conclusion that the Agreement is a valid and enforceable reconciliation agreement is not clearly erroneous. Therefore, the

trial court did not err in distributing the marital estate in accordance with the Agreement. As our supreme court has eloquently observed,

> The truth is, it is exceedingly difficult to imagine why, in any case where there is no fraud, courts should displace the judgment of contracting parties and substitute their own. No persons in the world can so well and so justly judge as the contracting parties themselves, and it is only in the strongest and clearest cases that courts should disregard their judgment, and never where there is neither positive wrong nor fraud.

*Boren*, 475 N.E.2d at 694. We affirm the decision of the trial court.

Affirmed.

Friedlander, J., and Kirsch, J., concur.