## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 25 2017, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

D. Eric Neff
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Margo R. Babineaux
Meinzer & Babineaux LLC
St. John, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Florence Speichert,

*Appellant-Respondent,*

v.

Carl Speichert,

*Appellee-Petitioner*

May 25, 2017

Court of Appeals Case No.
45A05-1610-DR-2451

Appeal from the Lake Superior Court

The Honorable Nanette K. Raduenz, Special Judge

Trial Court Cause No.
45D05-1605-DR-15

**Baker, Judge.**

Carl Speichert ("Husband") filed a petition to dissolve his marriage to Florence Speichert ("Wife"). Wife appeals the trial court's enforcement of the parties' marital property agreement.

## Facts

Husband and Wife were married on November 2, 1997. They each had children from prior marriages, but none of this marriage. Both Husband and Wife owned assets in their individual names prior to the marriage.

In May 2002, the parties discussed keeping their property separate so they could maintain their assets for their respective children. Because verbal communication was minimal in their marriage, Husband gave Wife a handwritten document that itemized their separate property; both Husband and Wife signed this document.

In March 2007, Husband wanted to separate from Wife and considered ending their marriage. On March 6, 2007, Husband gave Wife a handwritten letter in which he stated that he was unhappy and wanted to separate. Husband then consulted an attorney, from whom he learned that he could either pursue a dissolution of marriage or sign a formal post-nuptial agreement and attempt to make the marriage work. Husband decided to stay in the marriage, and he asked his attorney to draft the post-nuptial agreement.

On June 12, 2007, Husband and Wife executed a Marital Property Agreement (the "Agreement") which established each of their rights in and to the other's property and each of their wishes to preserve their assets for their respective

children in the event of death or dissolution of marriage. The Agreement provided that Husband's and Wife's individually held property would continue to be owned as separate property by each of them as individuals; it also provided that Husband and Wife disclaimed any interest in and to the property of the other. Schedule A listed Wife's individual assets, and Schedule B listed Husband's individual assets.

Since at least 2002, Husband and Wife have maintained their individually held assets separately, although Husband paid their joint credit card debt. Since at least 2007, Husband and Wife lived in the same home but pursued separate lives. They handled their own financial matters separately without input from the other; they used their own respective incomes and savings to pay their own costs and expenses, including the expenses for the real property each owned; and they filed individual tax returns each year and did not share any income tax refunds. Husband and Wife hardly talked with or spent time with each other.

On November 23, 2015, Husband filed a petition to dissolve their marriage. On March 4, 2016, Husband filed a motion to enforce the Agreement; Wife filed an objection. After a hearing on June 17, 2016, on the motion to enforce the Agreement, the trial court granted Husband's motion. On August 15, 2016, Wife filed a motion to correct error, which the trial court denied. She now appeals.

# Discussion and Decision

## I. Enforcement of the Agreement

[8] Wife argues that the trial court erred in concluding that the Agreement is valid and enforceable because it was not supported by adequate consideration. Our standard of review of the trial court's findings of fact and conclusion is well established:

> [F]irst we determine whether the evidence supports the findings, and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo.

*Hall v. Hall*, 27 N.E.3d 281, 284 (Ind. Ct. App. 2015) (citations omitted).

[9] To promote the amicable settlement of disputes that have arisen or may arise between parties to a marriage in the event of the dissolution of their marriage, the parties may agree in writing to provisions for the disposition of any property owned by either or both of the parties. Ind. Code § 31-15-2-17. Reconciliation agreements made between parties in order to preserve the marriage are valid and binding when they are entered into freely and without fraud, duress, or misrepresentation, and are not unconscionable. *Hall*, 27 N.E.3d at 285. "[T]he

extension of a marriage that would have otherwise been dissolved but for the execution of an agreement to reconcile has been deemed adequate consideration" to support a reconciliation agreement. *Id.*

[10] When Husband was unhappy in the marriage, he consulted an attorney about his options. Husband testified that, but for this Agreement, he would have filed a petition to dissolve the marriage. Husband and Wife had a strained relationship and seldom verbally communicated with each other. Nonetheless, after signing the Agreement, the marriage continued for an additional nine years. This evidence supports the trial court's findings of fact and conclusion that the Agreement constituted a reconciliation agreement supported by adequate consideration.

[11] Wife also argues that because she and Husband resided together in the marital residence and were not physically separated when they executed the Agreement, they were not "sufficiently separated" for the requirements of Indiana Code section 31-15-2-17 to be met. Appellant's Br. p. 14. Initially, we note that Indiana Code section 31-15-2-17, which governs post-nuptial agreements, does not refer to the separation status of the parties of the marriage. Moreover, the initiation of dissolution proceedings is not a condition precedent to a valid and enforceable reconciliation agreement. *Hall*, 27 N.E.3d at 285. Instead, "[t]he proper inquiry is whether the agreement was executed in order to preserve and extend a marriage that otherwise would have been dissolved but for the execution of the agreement" regardless of the status of formal separation or legal proceedings. *Id.* Accordingly, the fact that Husband and Wife were

living in the same house is not relevant in determining the Agreement's enforceability.

## II.  Parol Evidence

Wife also argues that the trial court erred by admitting parol evidence during the hearing even though the Agreement contained no ambiguity.  Specifically, the trial court admitted into evidence the parties' 2002 agreement and Husband's 2007 letter to Wife over the Wife's objections.[1]

During the hearing, Wife alleged that the Agreement was invalid because she signed it under duress, she had not read the Agreement before she signed it, there was no meeting of the minds, and there was a lack of consideration.  The acceptance or rejection of a post-nuptial agreement is within the trial court's discretion.  *Beaman v. Beaman*, 844 N.E.2d 525, 530 (Ind. Ct. App. 2006). When allegations are made about an agreement's validity, courts have looked to the parties' behavior and other circumstances to understand their state of mind and intent.  *See Ryan v. Ryan*, 659 N.E.2d 1088, 1092 (Ind. Ct. App. 1995) (finding that the trial court could rely on evidence outside the pre-nuptial agreement to support to validity of the agreement).

---

[1] During the hearing, Wife objected to the admission of the 2002 agreement based on relevancy and the admission of the letter based on authenticity.  Thus, the argument raised on appeal based on parol evidence is waived.  Waiver notwithstanding, we will still discuss her argument.

[14] Here, the trial court admitted into evidence the 2002 agreement and Husband's 2007 letter to Wife to determine each party's state of mind and intent in signing the Agreement. The trial court considered the 2002 agreement, the fact that Wife acted accordingly and in compliance with its terms, and the fact that the Agreement mirrors the 2002 agreement, as evidence that the parties always intended to maintain their individual assets separately. As for the 2007 letter, the trial court admitted it to further evaluate the parties' intent when they signed the Agreement, and found that Wife's testimony substantiated the facts set forth in the letter about the status of their marital relationship, including that Husband and Wife were living separate lives and spending little time together. In sum, the trial court considered and weighed these two documents to support its finding that there was a meeting of the minds as to the intent and purpose of the Agreement and that the Agreement accurately reflected Husband and Wife's intentions in 2007. The trial court did not err in admitting the evidence.

[15] Wife also contends that the Lake County local rules require complete financial disclosure, and that she did not have full disclosure before she entered into the Agreement. However, it is undisputed that Schedules A and B attached to the Agreement accurately reflected all property individually owned by each party. Moreover, because Husband and Wife maintained their assets separately both before and after they signed the Agreement, and because Wife does not specify what information was not disclosed to her, we do not see what additional disclosures she could expect.

[16] The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.