FILED

Nov 15 2017, 7:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Peter J. Rusthoven
Christopher J. Bayh
Barnes & Thornburg LLP
Indianapolis, Indiana

Holly J. Wanzer
Wanzer Edwards PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Andrew Z. Soshnick
Teresa A. Griffin
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

George A. Buskirk,

*Appellant-Respondent,*

v.

Maureen Buskirk,

*Appellee-Petitioner.*

November 15, 2017

Court of Appeals Case No.
06A01-1610-DR-2296

Appeal from the Boone Circuit
Court

The Honorable J. Jeffrey Edens,
Judge

Trial Court Cause No.
06C01-1603-DR-182

**Brown, Judge.**

[1] George A. Buskirk ("Husband") appeals the trial court's order finding a postnuptial agreement unenforceable and ordering that he pay Maureen Buskirk ("Wife") maintenance and her attorney fees. He raises two issues which we revise and restate as whether the trial court erred in entering summary judgment in favor of Wife. We reverse.

## Facts and Procedural History

[2] On December 30, 1972, Husband and Wife were married, and on June 1, 1976, they entered into a postnuptial agreement (the "Agreement"). The Agreement provided in part:

> Whereas, said Husband and Wife have been married for several years and have been and are now living together as husband and wife; and
>
> Whereas, in order to better effect harmonious domestic tranquility Husband and Wife desire to resolve their respective rights in the estates of the other during the lifetime of the parties hereto and have reached an agreement concerning the respective rights that each party claims in the property of the other. Now Therefore, the parties agree as follows:
>
> 1. That both Husband and Wife have made to each other a full disclosure of the nature and extent of the estate of the other and of the expectancies of each in the estate of the other and that both Husband and Wife, in light of such disclosures to each other have entered into this agreement.
>
> 2. That the consideration upon which this agreement is based consists, among other things, (A) the continued and expected continuance of the marriage between Husband and Wife, and

that neither party contemplates a dissolution of the marriage at any time, (B) the mutual waivers and releases of the parties which might or could devolve upon them in the event an action for divorce were filed by either party culminating in divorce and a Court of Law to make distribution of the rights of the parties.

3. In consideration of the mutual promises of the parties, Husband does hereby relinquish, waive and release all right and interest, statutory or otherwise, including, but not limited to, dower, widow's allowance, statutory allowance, distribution in intestacy and right of election to take against the will of said Wife which he might otherwise acquire or possess as the widow, heir-at-law, next of kin, or distributee of said Wife including but not limited to:

a) any property owned by said Wife at the time of the marriage or acquired by her at any time thereafter.

b) any property in her estate upon her death, under the laws of any jurisdiction which may be applicable.

c) one-half of all furnishings and household goods acquired by Husband and Wife during their marriage, and not specifically the designated personal property of said Wife.

d) any income, savings, stocks, bonds, life insurance or other investments acquired by said Wife prior to marriage or at any time thereafter or in the future.

e) any inheritance received by said Wife at any time, from any source, now or in the future.

f) any real estate now owned by said wife or hereafter acquired including but not limited to . . . .

4.  In consideration of the mutual promises of the parties, Wife does hereby relinquish, waive and release all right and interest, statutory or otherwise, including, but not limited to, dower, widow's allowance, statutory allowance, distribution in intestacy and right of election to take against the will of said Husband which she might otherwise acquire or possess as the widow, heir-at-law, next of kind, or distributee of said Husband including but not limited to:

a) any property owned by said Husband at the time of the marriage or acquired by him at any time thereafter.

b) any property in his estate upon his death, under the laws of any jurisdiction which may be applicable.[1]

c) one-half of all furnishings and household goods acquired by Husband and Wife during their marriage, and not specifically the designated personal property of said Husband.

d)  any income, savings, stocks, bonds, life insurance or other investments acquired by said Husband prior to marriage or at any time thereafter or in the future.

e) any inheritance received by said Husband at any time, from any source, now or in the future.

f) any real estate now owned by said Husband or hereafter acquired including but not limited to . . . .

---

[1] The Agreement contained some text that was crossed out and appears to duplicate the remaining text in the document.

5)  Husband and Wife shall have the absolute right to manage, dispose of, or otherwise deal with any property now separately owned, or hereafter separately acquired, in any manner whatsoever, and may enjoy and dispose of such property in the same manner as if the marriage had not taken place.

6)  Notwithstanding the provisions of this Agreement, either party shall have the right to transfer or convey to the other any property or interest therein which may be lawfully conveyed or transferred during his or her lifetime or by Will or otherwise upon death, and neither party intends by this Agreement to limit or restrict in any way the right and power to receive any such transfer or conveyance from the other.

Appellee's Appendix Volume II at 6-9.

[3]    On March 16, 2015, Wife filed a verified petition for dissolution of marriage and requested a division of property, maintenance, and attorney fees.  On April 15, 2016, Husband filed a motion to enforce the Agreement.  On May 23, 2016, Wife filed a motion for summary judgment.  On June 24, 2016, Husband designated his affidavit as evidence in which he stated in part:

3.  I am a law school graduate.  In 1976, I was not practicing law. I was working as a trust officer in a bank.

4.  Mrs. Buskirk is a college graduate from Purdue University with a Bachelor's Degree in Home Economics and a Master's Degree in Consumer Finance.  In 1976, she was working as a school teacher.

5.  In 1976, Mrs. Buskirk and I applied for a construction loan to build a house on a vacant lot I owned in Boone County, Indiana.

6. Our application for a construction loan was denied because our application failed to disclose that Mrs. Buskirk had pledged her interest in real estate located in Sullivan County, Indiana as collateral for a loan taken out by her father. I did not know that Mrs. Buskirk's interest in real estate had been used as collateral. Mrs. Buskirk did not disclose this pledge on her construction loan application.

7. Mrs. Buskirk and I disagreed about whether it was appropriate to use her real estate interests as collateral for a loan for her father. We disagreed about whether she should have discussed this issue with me prior to pledging her interest as collateral.

8. As a result of our disagreement, Mrs. Buskirk left our marital home for several days.

9. Several days after Mrs. Buskirk left our home, she and I met at a restaurant to discuss the marriage. We discussed ending the marriage as a result of our disagreement.

10. Mrs. Buskirk and I decided that making an agreement about keeping our property and income separate would solve our disagreement and would allow our marriage to continue.

11. On June 1, 1976, Mrs. Buskirk and I signed the Postnuptial Agreement attached hereto as Exhibit A in front of our neighbors, Ona Kincaid and Ralph Kincaid. Ona Kincaid was a notary, and she notarized our signatures.

12. I had never drafted a postnuptial agreement before, and I used a form book to assist with drafting the one Mrs. Buskirk and I signed in 1976. I have not drafted a postnuptial agreement other than the one Mrs. Buskirk and I signed.

13.  After Mrs. Buskirk and I signed the Postnuptial Agreement we did not acquire joint property or debt.  We did not file joint tax returns.

Appellant's Appendix Volume II at 47-48.

On August 18, 2016, the court held a hearing.  Wife and Husband testified, and the court took the matter under advisement.

On September 13, 2016, the court granted Wife's motion for summary judgment.  The court's order states in part:

> 31)  The Court looks to the Postnuptial Agreement in order to determine if adequate consideration was stated as a matter of law.
>
> 32)  Specifically, the Court reviews the Postnuptial Agreement in order to determine whether or not the parties entered into it with the intent of reconciling and extending their marriage **which would otherwise have been dissolved but for the execution of the agreement itself.**  (emphasis added)
>
> **Paragraph 2(A) Controls The Issue**
>
> 33)  The intent of the parties is clearly and unambiguously stated in Paragraph 2(A) of the Postnuptial Agreement.
>
> 34)  Paragraph 2(A) states that, at the time they entered into the agreement, the parties did not contemplate that the dissolution of their marriage would occur **at any time**. (emphasis added)

35) Whatever the agreement was meant to be, on its face, it was not entered into as a reconciliation agreement.

36) The Postnuptial Agreement was made without valid consideration and is not enforceable.

37) Further, the clear and unambiguous language of Paragraph 2(A) controls over any other stated consideration in the Postnuptial Agreement.

38) For example, Paragraph 2(B) states that the parties' mutual waivers and releases also constitute valid consideration for the Postnuptial Agreement.

39) However, the parties cannot waive and release anything unless there was valid consideration given for them to do so in the first place.

40) Here there was not.

41) In the alternative, in the event that Paragraph 2(A) and (B), when read together, could be seen as ambiguous, that ambiguity must be strictly construed against the drafter.

42) In this case the drafter was husband who also was at the time he drafted the document a law school graduate.

43) After reviewing the plain meaning of the Postnuptial Agreement the Court finds, as a matter of law, that the parties did not enter into it with the intent of reconciling and extending of their marriage which would otherwise have been dissolved but for the execution of the agreement itself.

44) The Court finds that, as a matter of law, the Postnuptial Agreement was entered into without valid consideration.

45) The Court finds that, as a matter of law, the Postnuptial Agreement is not enforceable.

46) The Court orders that [Wife's] Motion for Summary Judgment is granted.

*Id.* at 15-16. The court also ordered that Husband pay Wife weekly maintenance of $858 or monthly maintenance of $3,500 and pay $10,000 of Wife's attorney fees.

## Discussion

The issue is whether the trial court erred in granting Wife's motion for summary judgment. Husband argues that nothing in the Agreement states that the parties did not consider dissolving their marriage and that the parties' contemplation that a marriage will not be dissolved going forward is a classic consideration for a reconciliation agreement. He contends that, assuming the trial court's interpretation of Paragraph 2(A) was correct, then the consideration recited in Paragraph 2(B) independently supports the Agreement. He asserts that Paragraphs 2(A) and 2(B) are not in conflict, create no ambiguity, and that, even if they are ambiguous, then it should be resolved by looking to other rules of construction and, if necessary, extrinsic evidence. He also contends that enforcing the Agreement forecloses ordering either spouse to pay any maintenance or attorney fees to the other.

Wife argues that the trial court correctly read Paragraph 2(A) to mean that the parties did not contemplate that the dissolution of their marriage would occur at any time. She asserts that Paragraph 2(B) does not state the consideration that is required for a reconciliation agreement and does not eviscerate the plain and ordinary meaning of Paragraph 2(A) and that Husband's affidavit was parol and extrinsic evidence that may not be considered. She also argues that the Agreement does not apply in the event of a divorce and that the waivers and releases in the Agreement are all couched in terms of what the other foregoes under the contract as a widow, heir-at-law, next of kin, or distributee of the other party.

We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* "An appellate court may affirm summary judgment if it is proper on any basis shown in the record." *Pfenning v. Lineman*, 947 N.E.2d 392, 408-409 (Ind. 2011). Our review of a summary judgment motion is limited to those materials designated to the

trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001).

As for the parties' arguments regarding consideration, we observe that the basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-813 (Ind. 2009). Whether a contract exists is a question of law. *Id.* at 813. To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee. *Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174, 179 (Ind. 2010), *modified on reh'g on other grounds*, 942 N.E.2d 796 (Ind. 2011). "[T]he concept of consideration encompasses any benefit—however slight—accruing to the promisor or any detriment—however slight—borne by the promisee." *Id.*

"It has long been held that antenuptial agreements are valid and binding 'so long as they are entered into freely and without fraud, duress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable.'" *Hall v. Hall*, 27 N.E.3d 281, 285 (Ind. Ct. App. 2015) (quoting *In re Marriage of Boren*, 475 N.E.2d 690, 693 (Ind. 1985)), *trans. denied*. "[W]e have concluded that the same should apply to reconciliation agreements made between parties in order to preserve the marriage." *Id.* (citing *Flansburg v. Flansburg*, 581 N.E.2d 430, 436 (Ind. Ct. App. 1991), *trans. denied*).

In *Hall*, we acknowledged language in other cases that a valid reconciliation agreement may be made only between parties who have legally "separated or

filed for dissolution." *Hall*, 27 N.E.3d at 285 (quoting *Gaskell v. Gaskell*, 900 N.E.2d 13, 17 (Ind. Ct. App. 2009) (quoting *Flansburg*, 581 N.E.2d at 436)). We also recognized that, most often, the initiation of dissolution proceedings will in fact precede the execution of a reconciliation agreement as it did in those cases. *Id.* We nevertheless disagreed with the husband that such is a condition precedent to a valid and enforceable reconciliation agreement. *Id.* We held that "[t]he proper inquiry is whether the agreement was executed in order to preserve and extend a marriage that otherwise would have been dissolved but for the execution of the agreement, *see Flansburg*, 581 N.E.2d at 434, regardless of whether formal separation has already occurred or legal proceedings initiated." 27 N.E.3d at 285. We also held that it is well settled that parol evidence may be considered if it is not being offered to vary the terms of the written contract. *Id.* at 287. Among other reasons, parol evidence may be considered to show the nature of the consideration supporting a contract and to shed light upon the circumstances under which the parties entered into the written contract. *Id.* *See also Krieg v. Hieber*, 802 N.E.2d 938, 944 (Ind. Ct. App. 2004) (observing that the Indiana Supreme Court "has held that parol evidence may be considered to show the nature of the consideration supporting a contract" (citing *Kentucky & I.B. Co. v. Hall*, 125 Ind. 220, 224, 25 N.E. 219, 220 (1890)); and that "parol evidence may be considered to apply the terms of a contract to its subject matter and to shed light upon the circumstances under which the parties entered into the written contract" (citing *Millner v. Mumby*, 599 N.E.2d 627, 629 (Ind. Ct. App. 1992)).

[12]     While the Agreement states at one point that neither party "contemplates a dissolution of the marriage at any time," it also mentions "mutual waivers and releases of the parties which might or could devolve upon them in the event an action for divorce were filed . . . ." Appellee's Appendix Volume II at 6. The Agreement also states: "[I]n order to *better effect harmonious domestic tranquility* Husband and Wife desire to resolve their respective rights in the estates of the other during the lifetime of the parties hereto and have reached an agreement concerning the respective rights that each party claims in the property of the other." *Id.* (emphasis added). Under the circumstances, we conclude that Husband's affidavit, which alleged that the parties had a disagreement, that Wife left home for several days, that they discussed ending the marriage as a result of the disagreement, that they decided that making an agreement about keeping their property and income separate would solve their disagreement allow their marriage to continue, and that they signed the Agreement, can be considered to show the nature of the consideration supporting the contract and that the affidavit raises an issue of fact regarding consideration. Moreover, we observe that the Agreement contains mutual releases which constitute consideration. *See generally* 41 C.J.S. Husband and Wife § 155 ("The mutual promises of a husband and wife may constitute a sufficient consideration to support a postnuptial marital agreement."); *see also Greensburg Water Co. v. Lewis*, 189 Ind. 439, 128 N.E. 103, 107 (1920) ("It has been held that the relinquishment by both parties of their respective rights under the contract is a sufficient consideration to support an agreement by each party to absolve the other from all obligations imposed by the contract; or, as more frequently

stated, the mutual release from the obligations of the old contract is an adequate consideration for the rescission."). Thus, we conclude that the trial court erred in granting Wife summary judgment on this basis.

[13] We next turn to interpreting the Agreement. "Interpretation of a contract is a pure question of law and is reviewed de novo." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005). "[R]elease documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314 (Ind. 1996) (quoting *Huffman v. Monroe Cty. Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992)). If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Dunn*, 836 N.E.2d at 252. Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. *Id.* "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Rogers v. Lockard*, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002). Generally, an ambiguous contract will be construed against its drafter. *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132, (Ind. 1995). "If a contract is ambiguous solely because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law to be determined by the trial court." *Id. Id.* at 1133. "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002), *reh'g denied*. "Rules of contract construction and extrinsic evidence

may be employed in giving effect to the parties' reasonable expectations." *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the factfinder." *Id.*

[14] Paragraph 2 of the Agreement states that the consideration consists, in part, of "the mutual waivers and releases of the parties which might or could devolve upon them in the event an action for divorce were filed by either party culminating in divorce and a Court of Law to make distribution of the rights of the parties." Appellee's Appendix Volume II at 6. Thus, the Agreement specifically addresses releases of rights in the event of divorce. We also observe that Paragraph 5 of the Agreement provides that "Husband and Wife shall have the absolute right to manage, dispose of, or otherwise deal with any property now separately owned, or hereafter separately acquired, in any manner whatsoever, and may enjoy and dispose of such property in the same manner as if the marriage had not taken place." *Id.* at 9. It is undisputed that after signing the Agreement the parties did not acquire joint property or debt and did not file joint tax returns. We conclude that the Agreement sets forth the parties' intent to waive any right to property of the other including spousal maintenance and attorney fees in a dissolution of their marriage.

### *Conclusion*

[15] The Agreement was entered into as a reconciliation agreement, was made with valid consideration, set forth the parties' intent to waive any rights to property

of the other, and is enforceable.  For the foregoing reasons, we reverse the trial court's order.

[16]     Reversed.


May, J., and Pyle, J., concur.