

FILED

May 20 2020, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John A. Kindley
South Bend, Indiana

ATTORNEY FOR APPELLEE

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brice Holden,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 20, 2020

Court of Appeals Case No.
19A-CR-1795

Appeal from the Clay Circuit
Court

The Honorable Joseph D. Trout,
Judge

Trial Court Cause No.
11C01-1902-F4-132

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Brice Holden (Holden), appeals his conviction for child molesting, a Level 4 felony, Ind. Code § 35-42-4-3(b).

We affirm.

# ISSUES

Holden presents the court with three issues, which we restate as:

    (1) Whether the State proved beyond a reasonable doubt that he committed Level 4 felony child molesting;

    (2) Whether the trial court committed fundamental error when it admitted the stipulated results of his polygraph examination into evidence; and

    (3) Whether the trial court abused its discretion when it admitted certain testimony over Holden's hearsay objection.

# FACTS AND PROCEDURAL HISTORY

During the late fall of 2017, A.W. moved into her parents' home in the 1000 block of East Hendrix Street in Brazil, Indiana, with her three children, the oldest of whom was four-year-old M.L. A.W.'s sister, C.C., C.C.'s two children, and C.C.'s boyfriend, Holden, who went by the name "Scoop Dog", also lived in the small home. A.W. and M.L. slept together in one of the home's two bedrooms.

In November 2017, Holden entered A.W. and M.L.'s bedroom while they were sleeping and touched M.L.'s vaginal area with his hand. Holden scratched M.L.'s vaginal area, causing her to bleed. Holden ran out of the room when A.W. began to awaken. Later in the day, M.L. noticed that she was bleeding, showed A.W. the scratch and the blood, and told A.W. that it had been caused by Holden scratching her. A.W. did not alert the authorities about M.L.'s report.

On February 2, 2018, A.W.'s children, including M.L., were removed from her care and placed together in a foster home. Approximately two weeks after being placed with her foster family, M.L. disclosed to her foster mother that "Scoop Dog" had scratched her "cooty bun," which was the word she used for her vagina. (Transcript Vol. II, p. 238). M.L.'s foster mother alerted M.L.'s Court Appointed Special Advocate who, in turn, alerted the Department of Child Services. On March 1, 2018, M.L. was forensically interviewed at Susie's Place in Terre Haute. In the videotaped interview, M.L. repeated what she had told her mother and foster mother. M.L. indicated on anatomical drawings that Holden had touched her vaginal area with his thumb, and she provided a detailed physical description of Holden.

On November 30, 2018, Holden was interviewed by Detective Craig Bass of the Brazil Police Department. Holden agreed to undergo a polygraph examination. On January 7, 2019, before the administration of the polygraph examination, Holden and the prosecutor executed an Agreed Stipulation for Polygraph

Examination (Agreed Stipulation) that contained the following relevant provisions:

> 1) The parties have agreed that [Holden] shall submit to a Stress Evaluation or Polygraph Test to be performed by certified polygraph examiner, John Campbell, of the Indiana State Police, and that the result of said test and any statement made by [Holden] before, during, and after the administration of said test shall be admissible as evidence, without objection, at any trial or hearing.
>
> * * * *
>
> 5) The results and/or opinions resulting from the examination(s) are to be released orally and in writing by the examiner to [Holden] and the prosecuting attorney as soon as possible after the administration of the final polygraph test. This written report will be introduced into evidence, without objection by either party, at the time of the examiner's testimony at any trial hearing. []
>
> 6) [] The party offering [the examiner] as a witness will be allowed to fully develop his/her expertise or offer into evidence his/her opinions as to [Holden's] truthfulness or deception to the relevant test questions as they appear in the examiner's written report at any trial or hearing. []
>
> * * * *
>
> 12) That [Holden] acknowledges that he does have the right to consult with counsel prior to taking a polygraph examination, and that if he chooses to proceed without the benefit of counsel, that he is fully bound by the terms of his stipulation.

(Exh. 7, Exh. Vol., pp. 10-11). Holden placed his initials next to the acknowledgment that he had the right to consult with counsel prior to taking the polygraph. During the pre-examination interview, Holden denied touching M.L. for any reason, including accidentally or unintentionally. The polygraph examiner, John Campbell (Campbell), asked Holden, "Did you touch [M.L.'s] vaginal area?" and "Have you ever touched [M.L.'s] vaginal area?" (Exh. 8, Exh. Vol., p. 14). Holden responded "No" to each question. (Exh. 8, Exh. Vol., p. 14). Campbell determined that Holden was being deceptive when he responded to those questions.

[8] On February 8, 2019, the State filed an Information, charging Holden with Level 4 felony child molesting and Level 6 felony sexual battery. On March 21, 2019, the State filed a separate Information, alleging that Holden is an habitual offender. On April 4, 2019, the State filed a motion seeking a hearing on the admissibility of M.L.'s forensic interview under Indiana's Protected Persons Statute, alleging that forcing M.L. to testify at trial would damage her psychologically and emotionally, preventing her from communicating effectively, and that testifying at trial would disrupt any progress M.L. had made in healing. On April 18, 2019, the trial court held a hearing on the admissibility of M.L.'s forensic interview. M.L. testified at the hearing and was subject to cross-examination. On May 3, 2019, the trial court issued an order ruling that M.L.'s videotaped forensic interview was admissible, finding that M.L. was unavailable for purposes of testifying at trial and her forensic interview contained sufficient indicia of reliability to be admissible.

On June 6, 2019, the trial court granted the State's motion to dismiss the sexual battery charge. On June 10, 2019, the trial court convened Holden's two-day, bifurcated jury trial. Holden's polygraph report was admitted at trial without objection. Campbell testified, and on cross-examination, acknowledged that polygraph examinations were "not an exact science." (Tr. Vol. III, p. 27). During re-direct examination, Holden raised a hearsay objection to Campbell's testimony regarding what quality controls were done on his polygraph examinations. The trial court overruled Holden's objection after determining that Campbell would not quote or allude to another person's statements. The jury found Holden guilty of Level 4 felony child molesting. Holden then waived his jury trial right on the habitual offender enhancement allegation, and the trial court subsequently found that he had the requisite two prior, unrelated felony convictions.

On July 5, 2019, the trial court held Holden's sentencing hearing. The trial court imposed a twelve-year sentence for the Level 4 felony child molesting conviction. The trial court enhanced Holden's sentence by twelve years for being an habitual offender.

Holden now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

Holden challenges the sufficiency of the evidence supporting his conviction. It is well-established that when we review the sufficiency of the evidence to

support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. A person commits Level 4 felony child molesting when that person, with a child under fourteen years old, "performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person[.]" I.C. § 35-42-4-3(b). An intent to arouse or to satisfy sexual desires may be inferred from evidence that the defendant intentionally touched the child's genitals. *Winters v. State*, 727 N.E.2d 758, 761 (Ind. Ct. App. 2000), *trans. denied*. In addition, "[t]he testimony of a sole child witness is sufficient to sustain a conviction for molestation." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012).

[13] Here, M.L.'s forensic interview was admitted into evidence. In her interview, M.L. reported that while she was sleeping with A.W., Holden had touched M.L.'s vaginal area with his thumb and scratched her. This testimony was sufficient to support Holden's conviction. *See id.; see also Archer v. State*, 996 N.E.2d 341, 352 (Ind. Ct. App. 2013) (finding sufficient evidence of Level 4 felony child molesting by fondling where Archer entered the child's bed while she slept with her grandmother and touched child's vagina), *abrogated on other grounds*, 38 N.E.3d 985 (Ind. 2015). In addition, the jury's verdict was buttressed by A.W.'s testimony that she observed dried blood in M.L.'s

underwear and a scratch on M.L.'s vaginal area and by evidence that Holden denied that there was a alternative, innocent explanation for any physical contact that had occurred between him and M.L. *See Lockhart v. State*, 671 N.E.2d 893, 903 (Ind. Ct. App. 1996) (upholding Lockhart's conviction for child molesting by fondling where he touched and rubbed child's penis and had no non-incriminating explanations for the contact).

[14] Holden argues that insufficient evidence supported his conviction because the four months that passed between the offense and M.L.'s interview made her statements unreliable, there were unspecified "inconsistencies and implausibilities" in M.L.'s statement, no physical evidence corroborated the offense, and there was unspecified conflicting testimony by adults at trial. (Appellant's Br. p. 6). Even if we were able to fully discern these arguments, we would find them unavailing in that crediting them would entail reassessing the credibility of the witnesses and reweighing the evidence, all of which is contrary to our standard of review. *See Drane*, 867 N.E.2d at 146. Accordingly, we conclude that the State proved beyond a reasonable doubt that Holden committed the offense of Level 4 felony child molesting.

## II. *Admission of the Polygraph Report*

[15] Holden also challenges the admission into evidence of the polygraph report indicating that he had given deceptive responses. As a general rule, we review a trial court's evidentiary ruling for an abuse of discretion affecting a defendant's substantial rights. *Zanders v. State*, 118 N.E.3d 736, 741 (Ind. 2019). Acknowledging that he failed to object to the admission of the report at trial,

Holden requests that we review the trial court's evidentiary ruling for fundamental error. An error is fundamental only if it made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018). These errors create an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). This exception, however, is "extremely narrow" and encompasses only errors so blatant that the trial judge should have acted *sua sponte* to correct the situation. *Id.*

[16] This court has observed that "Indiana courts look with disfavor on the admission of polygraph examinations into evidence in criminal proceedings." *State v. Wroe*, 16 N.E.3d 462, 466 (Ind. Ct. App. 2014), *trans. denied*. Nevertheless, our supreme court has held that the results of polygraph examinations are admissible when four prerequisites are met:

> (1) the prosecutor, defendant, and defense counsel must all sign a written stipulation providing for the defendant's submission to the examination and for the subsequent admission at trial of the results;

> (2) the admissibility of the test results must be within the trial court's discretion as it relates to the examiner's qualifications and the test conditions;

(3) the opposing party must have the right to cross-examine the polygraph examiner if his graphs and opinion are offered in evidence; and

(4) the jury must be instructed that, at most, the examiner's testimony tends only to show whether the defendant was being truthful at the time of the examination, and that it is for the jury to determine the weight and effect to be given such testimony.

*Id*. (citing *Sanchez v. State*, 675 N.E.2d 306, 308 (Ind. 1996)).

[17] Holden does not argue explicitly that any of these four prerequisites were unmet in his case. Rather, Holden attempts to distinguish his case from *Wroe,* in which this court reversed a trial court's suppression of the results of a polygraph examination. *Id*. at 470. Wroe became a suspect in a child molesting investigation and offered to submit to a polygraph examination. *Id*. at 464. Before Wroe took the examination, he and the prosecutor entered into a stipulated agreement pursuant to which the results of the polygraph would be "admitted at any trial or hearing as evidence either on behalf of [Wroe] or the State of Indiana. The opposing party hereby expressly waives any and all objections to such testimony . . ." *Id*. at 465. The prosecutor also agreed to cease investigating Wroe if he passed the polygraph. *Id*. Contrasting his case with *Wroe*, Holden contends that the admission of the polygraph report here constituted fundamental error because the prosecutor did not agree to forgo investigating him if he passed the polygraph, and, thus, there was no "valid consideration, necessary for the formation of a valid contract" in the Agreed Stipulation. (Appellant's Br. p. 7).

[18] We disagree that *Wroe* established a threshold for the adequacy of the consideration necessary to support a valid stipulated agreement. A stipulated agreement on a polygraph examination is considered a contract and is subject to the principles of contract law and interpretation. *Willey v. State*, 712 N.E.2d 434, 440 (Ind. 1996). Consideration is an element of a valid contract consisting of a "benefit accruing to the promisor or a detriment to the promisee." *Buskirk v. Buskirk*, 86 N.E.3d 217, 222-23 (Ind. Ct. App. 2017). Here, as part of the Agreed Stipulation, the parties contemplated that the results of the polygraph examination would be admissible at trial by either party, with the non-offering party foregoing its right to object to its admission. Had Holden passed the polygraph, he would have been able to offer the results into evidence at trial without any objection by the State. Holden does not address this provision of the Agreed Stipulation which was sufficient consideration for the formation of a valid contract between him and the State, regardless of the lack of any additional promise on the part of the prosecutor to forego further investigation if Holden had passed the polygraph.

[19] Holden also attempts to distinguish *Wroe* given that we declined to invalidate a polygraph stipulation simply because Wroe had not been represented by counsel when he signed it. *Wroe*, 16 N.E.3d at 468. Assuming, without deciding, that Wroe's right to counsel under the Indiana constitution had attached, this court observed that Wroe had validly waived that right where, among other things, the stipulation contained an acknowledgement that Wroe understood that he had the right to an attorney, and, if he could not afford an

attorney, the trial court would appoint one for him and where Wroe did not argue on appeal that his waiver of counsel was unknowing or involuntary. *Id.* at 467-68. Holden contends in a one-sentence argument that "unlike the agreement at issue in *Wroe*, the [Agreed Stipulation] signed by Holden did not advise him that if he could not afford an attorney one would be appointed for him." (Appellant's Br. p. 7). However, the Agreed Stipulation contained an acknowledgment by Holden that he had a right to consult with counsel prior to signing the stipulation, and like Wroe, Holden does not argue on appeal that his waiver of counsel was unknowing or involuntary. Accordingly, we do not find that the admission of the polygraph report deprived Holden of a fair trial such that reversal is merited. *See Durden*, 99 N.E.3d at 652.

### III. *Hearsay*

[20] Holden argues that the trial court abused its discretion when it allowed Campbell to testify to what he claims was hearsay over his objection. After Campbell had acknowledged on cross-examination by Holden that polygraph examinations are not an exact science, the prosecutor asked Campbell on re-direct examination, "Now the defense counsel also elicited testimony that it's not an exact science. Does the Indiana State Police have a process to, I guess check your work or check your scores? And what is that process, if so." (Tr. Vol. III, p. 30). After the trial court overruled Holden's hearsay objection, the following exchange took place:

> Campbell: We—we do one hundred percent (100%) quality
> control. And what that means is there's peer review. If I

generate a report, if I administer a polygraph, another examiner will review it to evaluate my scores, check my report, and I'll do the same for the other examiners. So that quality control is one hundred percent a part of what we do.

Prosecutor: And then you had previously said you're using a computer. Does your computer score as well? Or is it just you looking at the responses and scoring on your own?

Campbell: I'll do a hand score and then I'll use a computer algorithm and the (indiscernable) instrument software and it will help to reinforce my decision.

(Tr. Vol. III, pp. 31-32). Holden complains that this testimony was inadmissible hearsay because it "referred to the review and supposed approval of persons not testifying in court[.]" (Appellant's Br. p. 8).

[21] Holden's argument mischaracterizes the testimony at issue. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement itself. Ind. Evidence Rule 801(c). Contrary to Holden's assertions, the cited testimony does not contain any out-of-court statements. Rather, Campbell described the process he uses to score polygraph examinations and the quality control his examinations undergo. Campbell did not relate any statement by a reviewer of Holden's polygraph results, nor did he relate the results of any computer algorithm he had run on Holden's polygraph results. In light of the absence of any hearsay in the challenged testimony, Holden has failed to establish an abuse of discretion on the part of the trial court in

admitting this evidence that affected his substantial rights. *See Zanders*, 118 N.E.3d at 741.

## CONCLUSION

[22] Based on the foregoing, we conclude that the State proved beyond a reasonable doubt that Holden committed Level 4 felony child molesting, the trial court did not commit fundamental error in admitting the polygraph examination report, and the trial court did not abuse its discretion in admitting Campbell's non-hearsay testimony.

[23] Affirmed.

[24] Mathias, J. and Tavitas, J. concur